## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF WEST VIRGINIA

**FRANK SKINNER,**

    Plaintiff,

v.                                                                          **Civil Action No. 2:07CV77**
                                                                              **(Judge Maxwell)**

**UNITED STATES OF AMERICA,**
**FEDERAL BUREAU OF PRISONS,**
**HARLEY LAPPIN, Director,**
**RAMIREZ, Clinical Director,**
**K. WHITE, Mid-Atlantic Regional Director,**
**G. MALDONADO, USP-Atlanta Warden,**
**YARK, USP-Atlanta Asst. Warden,**
**R. CRAIG, Counselor,**
**ITTAYEM, Physician's Assistant,**
**AL HAYNES, USP-Hazelton Warden,**
**V. PURI, Health Care Administrator,**
**BOYLES, Registered Nurse,**

    Defendants.

## REPORT AND RECOMMENDATION

The *pro se* plaintiff, a federal inmate, initiated this action by filing a civil rights complaint in the United States District Court for the District of Columbia on November 11, 2005, pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), a case in which the Supreme Court created a counterpart to 42 U.S.C. §1983 and authorized suits against federal employees in their individual capacities. In addition, the plaintiff also brought the action pursuant to 28 U.S.C. § 2671-80, the Federal Tort Claims Act (FTCA). As defendants, the plaintiff named the United States of America, the Federal Bureau of Prisons ("BOP"), and ten individual BOP

1

defendants named in their official and personal capacities: Harley Lappin, BOP Director; Mr. Ramirez, BOP Clinical Director; Kim White, BOP Mid-Atlantic Regional Director; G. Maldonado, Warden USP Atlanta; Assistant Warden Yark, USP Atlanta; Mahmoud Ittayem, Supervisory Assistant USP Atlanta; Richard Craig, Correctional Counselor USP Atlanta; Al Haynes, Warden USP Hazelton; Vandhna Puri Sharma, Health Services Administrator USP Hazelton, and Harold Boyles, Assistant Health Services Administrator, USP Hazelton. On April 10, 2006, the defendants filed a Motion to Dismiss or, in the Alternative, to Transfer Venue. On April 11, 2006, the United States District Court for the District of Columbia entered the equivalent of a Roseboro Notice. On March 6, 2007, the District Court for Columbia denied the defendants' motion to dismiss under Rule 12(b)(3) of the Federal Rules of Civil Procedure for improper venue and transferred the case to the United States District Court for the Southern District of Illinois.[1]

Following transfer of the case to the Southern District of Illinois, the parties were ordered to show cause why the action should not be transferred to the United States District Court for the Northern District of Georgia or the United States District Court for the Northern District of West Virginia. The parties also were directed to indicate which of those two districts were the more appropriate venue. In his response, the plaintiff appeared to confuse the issues of personal jurisdiction and subject matter jurisdiction, and the United States of America indicated transfer of venue was appropriate, but did not specify where the case should be transferred. See Civil No. 07-264-GPM, Doc. 39 (Southern District of Illinois). Accordingly, on September 18, 2007, the Southern District of Illinois transferred the case to this Court.

The plaintiff has filed several motions in this action, including motions to amend his

---

[1] At the time this order was entered, the plaintiff was incarcerated at FCI Greenville which is located in Greenville, Illinois.

2

complaint and to join new parties to the action. Motions pertaining to amending the complaint and joining parties have been denied. On October 6, 2008, the plaintiff filed a counterclaim against individuals not named in the original lawsuit and on November 12, 2008, the plaintiff filed a third-party complaint against yet another individual not named in the original lawsuit. This matter is before the undersigned for an initial review and report and recommendation pursuant to LR PL P 83.01, et seq., and 28 U.S.C. §§ 1915(e) and 1915(A).

## I. The Complaint

The plaintiff claims that he was exercising while in custody at USP Atlanta and sustained injuries to his testicles and left leg and groin area. He goes on to claim that Defendant Ittayem denied him medical treatment twice in a five to six month period. The plaintiff then states that he tried an informal resolution, but that Defendant Craig hid the grievance. Next, the plaintiff claims that Warden Maldonado and Assistant Warden Yark told the plaintiff that the situation "would be looked into." The plaintiff was then transferred to USP-Hazelton on April 14, 2005.

While at USP-Hazelton, the plaintiff claims that Warden Haynes denied him immediate medical relief and attention. He also claims that Defendant Puri denied him access to his medical records, and that Defendant Boyles stopped his application for a walking cane. Finally, the plaintiff claims that Defendant Ramirez listed an ultrasound that is contradictory with the ultrasound that the plaintiff received from Dr. Langley. The plaintiff asks for medical treatment and $1,000,000.00 in damages as relief.

## II. Standard of Review

Because plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious. Pursuant to 28

U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. Complaints which are frivolous or malicious, must be dismissed. 28 U.S.C. 1915(e).

A complaint is frivolous if it is without arguable merit either in law or fact. Neitzke v. Williams, 490 U.S. 319, 325. However, the Court must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). A complaint filed *in forma pauperis* which fails to state a claim under Fed. R.Civ. P. 12(b)(6) is not automatically frivolous. See Neitzke at 328. Frivolity dismissals should only be ordered when the legal theories are "indisputably meritless," Id. at 327.

### III. Analysis

#### A. Defendants United States of America and Federal Bureau of Prisons

A Bivens cause of action cannot be brought against a federal agency. See FDIC v. Meyer, 510 U.S. 471, 486 (1994); Steele v. Federal Bureau of Prisons, 355 F.3d 1204 (10th Cir. 2003). Therefore, neither the Bureau of Prisons nor the United States of America can be sued in a Biven's action.

#### B. Defendants Maldonado, Craig, Ittayem, Yark and White

For a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied. "First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and second, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements." Christian Sci. Bd. Of Dirs. Of the First Church of Christ v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001). The West Virginia long-arm statute is

contained in W.Va. Code §56-3-33(a).[2]

The Southern District of West Virginia has succinctly stated as follows regarding personal jurisdiction:

> "[b]ecause the West Virginia long-arm statute is coextensive with the full reach of due process, it is unnecessary...to go through the normal two-step formula for determining the existence of personal jurisdiction.  Rather the statutory inquiry

---

[2]This section provides as follows:
(a) The engaging by a nonresident, or by his or her duly authorized agent, in any one or more of the acts specified in subdivisions (1) through (7) of the subsection shall be deemed equivalent to an appointment by such nonresident of the secretary of state, or his successor in office, to be his or her true and lawful attorney upon whom may be served all lawful process in any action or proceeding against him or her, in any circuit court in this state, including an action or proceeding brought by a nonresident plaintiff or plaintiffs, for a cause of action arising from or growing out of such act or acts, and the engaging in such act or acts shall be a signification of such nonresident's agreement that any such process against him or her, which is served in the manner hereinafter provided, shall be of the same legal force and validity as though such nonresident were personally served with a summons and complaint within this state:

(1) Transacting any business in this state;
(2) Contracting to supply services or things in this state;
(3) Causing tortious injury by an act or omission in this state;
(4) Causing tortious injury outside this state if he or she regularly does or solicits business, or engages in any persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he or she might reasonably have expected such person to use, consume or be affected by the goods in this state; Provided, That he or she also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
(6) Having an interest in, using or possessing real property in this state; or
(7) Contracting to insure any person, property or risk located within this state at the time of contracting.

(b) When jurisdiction over a nonresident is based solely upon the provisions of this section, only a cause of action arising from or growing out of one or more of the acts specified in subdivision (1) through (7), subsection (a) of this section may be asserted against him or her.

necessarily merges with the Constitutional inquiry. In re Celotex Corp., 124 F.3d 619, 627-28 (4th Cir. 1997).

To satisfy constitutional due process, the defendant must have sufficient minimum contacts with West Virginia so that requiring it to defend its interest here would not "[o]ffend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Those minimum contacts necessary to confer jurisdiction are limited to those activities by which a person "purposely avails itself of the privilege of conducting activities within the forum state."Hanson v. Denckla, 357 U.S. 235, 253, 78 S,Ct. 1228, 2 L.Ed.2d 1283 (1958)see also In re Celotex, 124 F.3d at 628 (the minimum contacts must be "purposeful"). This occurs where the contacts "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state," Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed..2d 528 (1985)(emphasis in original), or where the defendant's efforts are "purposefully directed" at the state. Id. at 476, 105 S.Ct. 2174. Vass v. Volva Trucks North America, Inc., 304 F. Supp.2d 851, 854 (S.D. W.Va. 2004).

Warden Maldonado, Assistant Warden Yark, to the extent such an individual exists,[3] Defendant Craig, and Defendant Ittayem are all employees at USP-Atlanta. All of the allegations against these defendants by the plaintiff occurred in Atlanta. The plaintiff has failed to allege any type of contact between the State of West Virginia and these particular defendants. Therefore, these defendants must be dismissed from this action for lack of personal jurisdiction.

Kim White is the Regional Director for the Mid-Atlantic Region, which handles the

---

[3]The Federal Bureau of Prisons does not have an employee named A.W. Yark. (Doc. 39-14).

administrative remedy appeals for the BOP. Her office is located in Annapolis Junction, Maryland, and the plaintiff has not provided any further proof to show that the defendant had any other types of contact with the state of West Virginia. The fact that she, or her office, handles appeals from prisoners inside the state of West Virginia is insufficient to find that she has minimum contacts with the state. See Cuoco v. Hurley, 2000 WL 1375273 (D.Colo.) (*citing* Johnson v. Rardin, No. 91-1211, 1992 WL 9019, *1 (10th Cir. Jan. 17, 1992) (court lacks personal jurisdiction over defendants who signed reviews of inmate's appeals outside of the state). Therefore, Defendant White also must be dismissed from this action because of lack of personal jurisdiction over her.

### C. Defendant Lappin

Liability in a Bivens case is "personal, based upon each defendant's own constitutional violations." Truloch v. Freeh, 2755 F.2d 391, 402 (4th Cir. 2001) (internal citation omitted). Thus, in order to establish liability in a Bivens case, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainbright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for violation of a constitutional right in a Bivens case. Rizzo v. Good 423 U.S. 362 (1976).

Here, Plaintiff does not allege any personal involvement on the part of Defendant Lappin. Instead, it appears that Plaintiff has named this Defendant only in his official capacity as the Director of the Federal Bureau of Prisons. However, a suit against government agents acting in their official capacities is considered a suit against the United States itself. See Kentucky v. Graham, 473 U.S.

7

159, 165 (1985) ("Official-capacity suits . . . 'generally present only another way of pleading an action against an entity of which an officer is an agent.'"). Thus, remedy under <u>Bivens</u> is not available against the Lappin in his official capacity, and he should be dismissed as a defendant in this action.

**D. Defendant Haynes**

Defendant Haynes was the Warden at USP Hazelton at the time the plaintiff was incarcerated there. In <u>Miltier v. Beorn</u>, 896 F.2d 848, 854 (4th Cir. 1990), the Fourth Circuit recognized that supervisory defendants may be liable in a <u>Bivens</u> action if the plaintiff shows that: "(1) the supervisory defendants failed to provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with the prison doctors' performance; or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." In so finding the Court recognized that [s]upervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of *respondeat superior*, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." <u>Id</u>. However, a plaintiff cannot establish supervisory liability merely by showing that a subordinate was deliberately indifferent to his needs. <u>Id</u>. Rather, the plaintiff must show that a supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practice. <u>Id</u>.

In this case, the plaintiff has made no allegation that Warden Haynes tacitly authorized or was deliberately indifferent to an alleged violation of his constitutional rights. Moreover, to the extent that the plaintiff may be asserting that the Warden Haynes was deliberately indifferent to his needs by denying his administrative grievances, that claim is without merit because that is not the type of personal involvement required to state a <u>Bivens</u> claim. See <u>Paige v. Kuprec</u>, 2003 W.L. 23274357 *1

(D.Md. March 31, 2003).

**E. Defendants Puri, Boyles, and Ramirez**

The plaintiff alleges that Defendant Puri, is the Health Care Administrator at USP Hazelton and refused a request to release his medical records. The plaintiff alleges that Defendant Boyles is an R.N. at USP Hazelton and stopped his application for a walking cane even though he was barely able to walk, sit or stand. Finally, the plaintiff alleges that Defendant Ramirez is the Clinical Director at USP Hazelton and listed an ultrasound contrary to Dr. Langley's conclusion.[4]

A Bivens action, like an action under 42 U.S.C. §1983, is subject to exhaustion of administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). Porter v. Nussle, 534 U.S. 516, 524 (2002). Under the PLRA, a prisoner bringing an action "with respect to prison conditions" under 42 U.S.C. §1983 must first exhaust all available administrative remedies. 42 U.S.C. §1997e. Exhaustion, as provided in §1997e(a), is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). While the phrase "with respect to prison conditions" is not defined in 42 U.S.C. §1997e, the Supreme Court has determined that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter at 517. Moreover, exhaustion is even required when the relief the prisoner seeks, such as monetary damages, is not available. Booth, 532 U.S. at 741. The United States Supreme Court has held that proper exhaustion of administrative remedies is necessary, thus precluding inmates from filing untimely or otherwise procedurally defective administrative grievances or appeals and then pursuing a lawsuit alleging the

---

[4] It would appear that Dr. Langley may be a general surgeon at a hospital connected with West Virginia University.

9

same conduct raised in the grievance. See Woodford v. Ngo, 548 U.S. 81, 83 (2006). In Woodford, the United States Supreme Court clarified that the PLRA exhaustion requirement requires proper exhaustion. Id. at 84. The Court noted that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. The Court found that requiring proper exhaustion fits with the scheme of the PLRA, which serves three main goals: (1) eliminating unwarranted federal court interference with the administration of prisons; (2) "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Id. at 93-94. As the Court concluded, "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance." Id. at 95.

"The BOP makes available to its inmates a three level administrative remedy process if informal resolution procedures fail to achieve sufficient results. *See* 28 C.F.R. § 542. 10, *et seq* . This process is begun by filing a Request for Administrative Remedy at the institution where the inmate is incarcerated. If the inmate's complaint is denied at the institutional level, he may appeal that decision to the Regional Office for the geographic region in which the inmate's institution of confinement is located. If the Regional Office denies relief, the inmate can appeal to the Office of General Counsel via Central Office Administrative Remedy Appeal." Owens v. Haynes, No. 3:07cv29, 2008 WL 4571821 * 3 (N.D.W.Va. 2008).

Although the plaintiff fully exhausted his administrative remedies with respect to his claims regarding the medical care he received at USP Atlanta, he filed no administrative claims with respect to his allegations against Defendants Puri, Boyles, or Ramirez. (Doc. 39-14). In fact, the only

administrative remedy he pursued regarding his "medical" treatment at USP Hazelton, was a request for emergency relief in the form of a consultation with a gastrointestinal specialist, x-rays, examination by a neurologist and Magnetic Resonance Imaging (MRI) studies of his testicles, groin area, and left leg. (Doc. 39-2, p.7). Therefore, the claims the plaintiff brings against Defendants Puri, Boyles and Ramirez must be dismissed for failure to exhaust administrative remedies.

The undersigned recognizes that the plaintiff filed an amended complaint on April 10, 2007, in the United States District Court for the Southern District of Illinois. The plaintiff's sole reason for filing this amended complaint appears to be for the purpose of demonstrating that he has exhausted his administrative remedies with respect to the inadequate medical care he alleges he received at USP Hazelton. However, even if the attachments to the amended complaint demonstrate that he has exhausted his claims against Puri, Broyles and Ramirez, and it is not clear that they do,[5] he did not begin the process until **after** he filled his original complaint. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added). Accordingly, the claims against Puri, Broyles and Ramirez still must be dismissed.

### F. Inmate Co-payment Program

The Federal Prisoner Healthcare Co-Payment Act of 200 ("Co-payment Act), provides that the BOP may assess fees for health care services for prisoners. Pub. L. 106-294, October 12, 2000, 114 Stat 1038, codified as 18 U.S.C. § 4048. On October 3, 2005, the BOP adopted Program

---

[5]The substance of the grievances appears to be more related to the Inmate Co-payment Act.

Statement P6031.02-Inmate Co-payment Program, in response to the Co-payment Act. This Program Statement implements a policy to charge inmates a nominal co-payment for inmate-initiated use of health care services. The objectives of the program are to (1) encourage inmates to be more responsible for their own health and (2) promote the appropriate use of health care services by inmates. The Program Statement provides that inmates will be charged $2.00 per health care visit. However, inmates are excused from paying the co-payment fee for emergency services, diagnosis or treatment of infectious diseases, mental health care, and prenatal care. Furthermore, if a prisoner is not able to pay the co-payment fee because of indigence or lack of funds, the fee may be waived, and the Program Statement specifically provides that "[i]nmates will not be denied access to necessary health care because of an inmate's inability to pay the copay fee." An inmate may also appeal the co-payment fee through the Administrative Remedy Program.[6]

In his complaint, the plaintiff simply states that "I challenge the National New Law enacted October 3, 2005 to charge inmates for medical service."(Doc. 39-2, p. 3). He makes no specific allegation as to how , or if, he has been negatively impacted by the required co-pay. Furthermore, to the extent that the plaintiff is implying that he was not seen by Monongalia General Hospital on October 5, 2005, because of the co-pay requirement, the same is clearly without merit. Although the plaintiff may not have been seen on October 5, 2005, it is clear that he was seen on February 16, 2006, when he received an ultrasound of his scrotum with color flow doppler.[7]

---

[6]See ww.bop.gov for the complete Program Statement.

[7]See 1:07cv-00091-RWR (Doc. 15).

Accordingly, th plaintiff's bald assertion that he challenges the co-pay policy, without more, cannot survive initial screening. Accordingly, this "claim" should be dismissed.

### G. Federal Tort Claim Act

The plaintiff initiated an Administrative Tort Claim in May of 2005, seeking the sum of $1,000,000 for injuries he allegedly sustained at USP Hazelton. Because the plaintiff's underlying injury to his groin was sustained ay USP Atlanta, prior to his transfer to USP Hazelton, it appears that the thrust of the plaintiff's FTCA is the alleged medical negligence of staff at USP Hazelton. (Doc. 39-2, p. 17).

The Federal Tort Claims Act (FTCA) is a comprehensive legislative scheme by which the United States has waived its sovereign immunity to allow civil suits for actions arising out of negligent acts of agents of the United States. The United States cannot be sued in a tort action unless it is clear that Congress has waived the government's sovereign immunity and authorized suit under the FTCA. Dalehite v. United States, 346 U.S. 15, 30-31 (1953). The provisions of the FTCA are found in Title 28 of the United States Code. 28 U.S.C. § 1346(b), § 1402(b), § 2401(b), and §§ 2671-2680.

The Supreme Court has held that "a person can sue under the Federal Tort Claims Act to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150 (1963). However, the FTCA does not create a new cause of action. Medina v. United States. 259 F.3d 220, 223 (4th Cir. 2001). "The statute permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Id.

Under West Virginia law, certain requirements must be met before a health care provider may be sued. W.Va. Code §55-7B-6. This section provides in pertinent part:

13

**§ 55-7B-6. Prerequisites for filing an action against a health care provider; procedures; sanctions**

(a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.

(b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the rules of civil procedure.

This Court previously held that compliance with W.Va. Code §55-7B-6 is mandatory prior to filing suit in federal court. See Stanley v. United States, 321 F.Supp.2d 805, 806-807 (N.D.W.Va.2004).[8] There is nothing in the plaintiff's complaint which reveals he has met the requirements of W.Va. Code §55-7B-6. Thus, the undersigned recommends that his FTCA be dismissed.

## IV. Plaintiff's 'Counterclaim' and 'Third-Party' Complaint

On October 6, 2008, the plaintiff filed what purports to be a counterclaim and cross-claim against R. McFadden, the Western Region Director, T.A. Banks, the warden at FCI Victorsville,

---

[8]In Stanley, the plaintiff brought suit against the United States alleging that the United States, acting through its employee healthcare providers, was negligent and deviated from the "standards of medical care" causing him injury. The Court found that there was no conflict between the state pre-filing requirements and the pre-filing requirements of the FTCA. Stanley, 329 F.supp. 2d at 808-09. "[t]here is nothing to prevent a plaintiff from complying with both requirements." Id. at 809.

14

which is located in California, an individual with the last name Deveza, who is apparently the health service administrator at FCI Victorville, and B. Barton, M.D., who is apparently the medical director at FCI Victorville. In addition, on November 12, 2008, the plaintiff filed what purports to be a third party complaint against David Robertson, who is the President/CEO of Monongalia General Hospital. It would appear that the plaintiff filed the counter-claim and third party complaint in an effort to circumvent the undersigned's orders prohibiting him from amending his complaint or joining additional parties. However, it is clear that use of Rules 13 and 14 of the Federal Rules of Civil Procedure by the plaintiff is inappropriate. Furthermore, even if the pleadings were procedurally correct, this Court lacks personal jurisdiction over the California defendants, and David Robertson is not a federal employee, and therefore, is not an appropriate defendant in this case. Accordingly, these "defendants" should be dismissed from this action.

## V. Recommendation

In consideration of the foregoing, it is the undersigned's recommendation that:

(1) the plaintiff's <u>Bivens</u> complaint against the United States of America, the Federal Bureau of Prisons, Regional Director K. White, Director Harley Lappin and Warden Haynes, be **DISMISSED WITH PREJUDICE** under 28 U.S.C. § 1915(e) and 1915A for failure to state a claim upon which relief can be granted;

(2) the plaintiff's <u>Bivens</u> complaint against Warden Maldonado, A.W. Yark, P.A.M. Ittayem, and R Craig be **DISMISSED WITH PREJUDICE** for lack of personal jurisdiction;

(3) the plaintiff's <u>Bivens</u> complaint against Clinical Director Ramirez, V. Puri and D. Boyles be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies;

15

(4) the plaintiff's Federal Tort Claim Act be **DISMISSED WITHOUT PREJUDICE** for failure to comply with W.Va.Code § 55-7B-6;

(5) the plaintiff's attempted counterclaim and third-party claims against R. McFadden, T.A. Banks, Health Service Administrator Deveza, B. Barton, M.D., and David Robertson be **DISMISSED WITH PREJUDICE**; and

(6) the plaintiff's pending motions (Docs. 70, 71, 72, 74, 77, and 82) be **DISMISSED AS MOOT.**

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985) Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last know address as reflected on the docket sheet. The Clerk is further directed to provide copies of this Report and Recommendation to counsel of record via electronic means and add the United States Attorney for the Northern District of West Virginia as counsel of record.

Dated: July 1, 2009

 /s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE